Hope J. ELLSWORTH, and Adam John Ellsworth, David Michael Gibson, Jr., and Lewis Jadwin Asfeld, minors, by their Guardian ad Litem, Timothy J. O'Brien, Plaintiffs-Respondents-Cross-Appellants,

DUNN COUNTY DEPARTMENT OF HUMAN SERVICES, Plaintiff-Respondent,

v.

Mark A. SCHELBROCK, Defendant-Appellant-Petitioner,

MSI INSURANCE COMPANY, Defendant-Third-Party Plaintiff-Co-Appellant,

GENERAL MOTORS CORPORATION, Defendant-Third-Party Defendant-Respondent-Cross-Respondent,

ABC INSURANCE COMPANY, Third-Party Defendant.

Supreme Court

*No. 98–0294. Oral argument February 29, 2000.—Decided June 22, 2000.*

2000 WI 63

(Also reported in 611 N.W.2d 764.)

680

For the defendant-appellant-petitioner there were briefs by *James A. Pelish, Willem J. Noorlander* and *Thrasher, Doyle, Pelish & Franti, Ltd.*, Rice Lake, and oral argument by *James A. Pelish*.

For the plaintiffs-respondents-cross appellants there was a brief by *James A. Drill, Brian H. Sande* and *Doar, Drill & Skow, S.C.*, New Richmond, and oral argument by *Brian H. Sande*.

An amicus curiae brief was filed by *Arthur P. Simpson* and *Simpson & Deardorff*, Milwaukee, on behalf of Civil Trial Counsel of Wisconsin.

An amicus curiae brief was filed by *Edward E. Robinson* and *Cannon & Dunphy, S.C.*, Brookfield, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. WILLIAM A. BABLITCH, J. Mark A. Schelbrock (Schelbrock) seeks review of a published opinion by the court of appeals applying the collateral source rule to Medical Assistance payments. *Ellsworth v. Schelbrock*, 229 Wis. 2d 542, 600 N.W.2d 247 (Ct. App. 1999). Under the collateral source rule, the amount of damages awarded to a person injured because of another individual's tortious conduct is not reduced when the injured party receives compensation from another source, such as insurance or sick leave. *Payne v. Bilco Co.*, 54 Wis. 2d 424, 433, 195 N.W.2d 641 (1972). Schelbrock, the tortfeasor, argues that the

court of appeals erred in applying the collateral source rule here because the injured party, Hope Ellsworth (Ellsworth), did not personally incur liability for her medical expenses and the third-party payer, the State of Wisconsin through Dunn County, had subrogation rights. According to Schelbrock, Ellsworth's award for past medical expenses should be limited to the amount paid by the Medical Assistance program to her health care providers. We disagree.

¶ 2. Medical Assistance is social legislation providing a form of health insurance to certain needy individuals. Program participants receive gratuitous medical services paid for by the state. Because we apply the collateral source rule to insurance as well as to benefits provided gratuitously, we conclude that the rule is also properly applied when damages are awarded to an injured person who was also a Medical Assistance participant. Accordingly, we affirm.

## Facts

¶ 3. In April 1994 Schelbrock struck a vehicle driven by Ellsworth. As a result of the collision, Ellsworth was severely burned and required hospitalization for approximately four months. During this time she underwent several surgical procedures as well as extensive physical rehabilitation.

¶ 4. Ellsworth sued Schelbrock and his insurer, MSI Insurance Company. The Dunn County Department of Human Services intervened as party plaintiffs, asserting a claim of subrogation. Additional claims were made against other parties who were joined to the action. These claims are not at issue in this appeal. During the trial, Ellsworth introduced expert testimony stating that she had been the recipient of reasonable and necessary past medical services valued

at $597,448.27. No other testimony was introduced by any other party regarding the necessity of any medical treatment or the reasonable value of services provided to Ellsworth. Schelbrock objected to the expert testimony and to the use of any figure for past medical expenses other than $354,941, the amount paid by Medical Assistance to Ellsworth's health care providers. The circuit court judge held that as a matter of law Ellsworth's past medical expenses were $597,448.27, and used this amount in answer to the special verdict question on this matter. The jury found Schelbrock negligent, and that his negligence was a cause of injury to Ellsworth.

¶ 5. Schelbrock appealed. The court of appeals affirmed the finding of the circuit court regarding past medical expenses. This court granted review pursuant to Wis. Stat. § 808.10 (1997–98).

## Analysis

¶ 6. Wisconsin's tort law recognizes the collateral source rule. *Rixmann v. Somerset Pub. Sch.*, 83 Wis. 2d 571, 582, 266 N.W.2d 326 (1978). The issue presented here is whether the collateral source rule applies to Medical Assistance benefits.[1] This is a question of law reviewed independently of the decisions of the court of appeals and circuit court, although aided by their analyses. *Brown v. Dibbell*, 227 Wis. 2d 28, 42, 595 N.W.2d

---

[1] We note, as did the court of appeals, that we are not addressing the situation where a provider of medical services charges less as part of an agreement to act as the exclusive provider of treatment as part of a managed care plan. *Ellsworth v. Schelbrock*, 229 Wis. 2d 542, 553 n.2, 600 N.W.2d 247 (Ct. App. 1999).

358 (1999). Wisconsin Stat. ch. 49 (1993–94)[2] regulates public assistance programs, including Medical Assistance. Statutory interpretation is also a question of law, which we review de novo. *McDonough v. Department of Workforce Dev.*, 227 Wis. 2d 271, 277, 595 N.W.2d 686 (1999).

¶ 7. In general, the collateral source rule provides that a tortfeasor's liability to an injured individual is not reduced because the individual received benefits or payments from other sources. *Payne*, 54 Wis. 2d at 433. Our tort law applies the collateral source rule as part of a policy seeking to "deter negligent conduct by placing the full cost of the wrongful conduct on the tortfeasor." *American Standard Ins. Co. v. Cleveland*, 124 Wis. 2d 258, 264, 369 N.W.2d 168 (Ct. App. 1985). The tortfeasor who is legally responsible for causing injury is not relieved of his obligation to the victim simply because the victim had the foresight to arrange, or good fortune to receive, benefits from a collateral source for injuries and expenses. In an early case applying the collateral source rule to wages this court stated:

> We see no reason why one whose acts have caused injury to another should reap the entire benefit that comes from the payment of wages made by an employer, either as a gratuity to a faithful employee or because such payments are required by contract. Such payments do not change the nature of the injury which the employee sustains through the wrongful acts of the tortfeasor. If either is to profit by the payments made by the employer, it should be the person who has been injured, not the

---

[2] All subsequent references are to the 1993–94 volume of the Wisconsin statutes, unless otherwise noted.

one whose wrongful acts caused the injury. The extent of the liability of the wrongdoer is dependent upon the extent of the injuries inflicted by his wrongful act, not upon the question whether the employee receives wages during disability from his employer.

*Campbell v. Sutliff*, 193 Wis. 370, 374, 214 N.W. 374 (1927), *overruled on other grounds Powers v. Allstate Ins. Co.*, 10 Wis. 2d 78, 92, 102 N.W.2d 393 (1960).

¶ 8. In its formulation of the collateral source rule the Restatement (Second) of Torts § 920A cmt. b (1979) states that "it is the tortfeasor's responsibility to compensate for all harm that he [or she] causes, not confined to the net loss that the injured party receives." The Restatement further provides that the collateral source rule applies to benefits from insurance policies, gratuities, and benefits from employment and social legislation. Restatement (Second) of Torts § 920A cmt. c (1979).

¶ 9. The collateral source rule has been applied in Wisconsin to medical expenses paid directly by Medicare or by an insurance company. *Thoreson v. Milwaukee & Suburban Transp. Corp.*, 56 Wis. 2d 231, 244, 201 N.W.2d 745 (1972). In *Thoreson*, we held that the collateral source rule "is not limited to paid-for benefits but applies to gratuitous medical services provided or paid for by the state." *Thoreson*, 56 Wis. 2d at 245.

¶ 10. Medical Assistance is a means of providing gratuitous medical services paid for by the state. Created by Title 19 of the federal Social Security Act of 1965, Medical Assistance is an entitlement program that pays for covered health services for certain low-income individuals. The program is funded jointly by

685

the federal and state government and is administered by the state within federal guidelines. The state pays certified providers for services furnished to program participants. Wisconsin Legislative Fiscal Bureau, *Informational Paper #44, Medical Assistance Program* (January 1999).

¶ 11. In addition, Medical Assistance, a public assistance program, creates a form of health insurance for certain needy individuals. We agree with the North Carolina Supreme Court, which stated: "Medicaid [Medical Assistance] is a form of insurance paid for by taxes collected from society in general. 'The Medicaid [Medical Assistance] program is social legislation; it is the equivalent of health insurance for the needy; and, just as any other insurance form, it is an acceptable collateral source.'" *Cates v. Wilson*, 361 S.E.2d 734, 738 (N.C. 1987) (quoting *Bennett v. Haley*, 208 S.E.2d 302, 311 (1974)). As we have noted, the Restatement applies the collateral source rule to social legislation. Restatement (Second) of Torts § 920A cmt. c (4).

¶ 12. Schelbrock, citing to Wis JI-Civil 1756, set forth below, asserts that because Ellsworth did not personally incur any liability for her medical expenses she is not entitled to an award of damages on this basis or to the benefit of the application of the collateral source rule.[3] According to Schelbrock, Ellsworth incurred no liability because the health care providers agreed to accept as payment in full the amount received from Medical Assistance. Wis. Admin. Code § HFS 106.04(3) (April, 1999). In addition, Wis. Stat. § 49.49(3m)(a) pro-

---

[3] Wis JI-Civil 1756 states that a plaintiff should be compensated for "the sum of money. . .[that] has reasonably and necessarily been incurred from the date of the accident. . .for the care and treatment of the injuries sustained by (plaintiff) as a result of the accident."

vides that, in general, a health care provider who accepts the payment made by Medical Assistance may not impose additional charges upon the program participant. We are not persuaded.

¶ 13. The genesis of Schelbrock's argument on this point is *Oliver v. Heritage Mut. Ins.*, 179 Wis. 2d 1, 505 N.W.2d 452 (Ct. App. 1993). In *Oliver* the plaintiff brought a personal injury action after the motorcycle he was riding collided with an automobile. Subsequently, he filed for bankruptcy "apparently because of his inability to pay his hospital and medical bills." *Id.* at 15. At trial, Oliver was awarded approximately $40,500 for past hospital and medical expenses. *Id.* at 22. However, because of the bankruptcy action Oliver had gained discharge of these bills. The circuit court therefore declined to assess these costs to the defendant, and the court of appeals affirmed. The court of appeals cited Wis JI-Civil 1750A (now withdrawn) for the proposition that "Wisconsin law mandates that medical bills be 'incurred' by a plaintiff in order to be the subject of compensation." *Oliver*, 179 Wis. 2d at 24.

¶ 14. Nevertheless, the primary basis for the decision in *Oliver* was that the collateral source rule is invoked when a third party pays or gratuitously provides or pays for benefits to the injured party. *Id.* at 23. The court of appeals found in *Oliver* that because of the bankruptcy action, no third party had given the plaintiff benefits and therefore the collateral source rule did not apply. *Id.* Although the court of appeals briefly raised the idea of medical bills being "incurred," it cited no precedent other than the jury instruction and did not discuss the application of its reasoning to situations where the collateral source rule is applied because benefits were provided gratuitously.

687

¶ 15. In *Thoreson* the issue of recovering damages when expenses were not incurred was addressed, and it was held that the collateral source rule applies to gratuitous medical benefits paid for by the state. *Thoreson*, 56 Wis. 2d at 243–45. We stated that a plaintiff may recover the reasonable value of medical costs.

> In most cases this is the actual expense, but in some cases it is not. *But the test is the reasonable value, not the actual charge, and therefore there need be no actual charge.. . .*The reason for this view is often given that the recovery has a penal effect on a tortfeasor and the tort-feasor should not get the advantage of gratuities from third parties.

*Thoreson*, 56 Wis. 2d at 243 (footnote omitted) (emphasis supplied). In addition, this court has on several occasions cited 22 Am. Jur. (2d) Damages § 207 (1965):

> "The general rule is that a plaintiff who has been injured by the tortious conduct of the defendant is entitled to recover the reasonable value of medical and nursing services reasonably required by the injury. This is a recovery for their value and not the expenditures actually made or obligations incurred. Thus, under this general rule, the fact that the medical and nursing services were rendered gratuitously to the one who was injured will not preclude the injured party from recovering the value of those services as part of his compensatory damages. Accordingly, the plaintiff's recovery will not be reduced by the fact that the medical expenses were paid by some source collateral to the defendant, such as by a beneficial society, by members of the plaintiff's family, by the plaintiff's employer, or by an insurance company. . . ."

*McLaughlin v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 31 Wis. 2d 378, 395–96, 143 N.W.2d 32 (1966) (quoting 22 Am. Jur. (2d) Damages § 207 (1965)); *Rixmann*, 83 Wis. 2d at 580; *see also Thoreson*, 56 Wis. 2d at 243. Thus, the injured plaintiff may recover the reasonable value of gratuitous medical services as part of his compensatory damages.

¶ 16. According to Schelbrock, the reasonable value of these services is established as the amount received by the health care providers from Medical Assistance. Schelbrock argues that recovery for past medical expenses should be limited to the amount paid by Medical Assistance because this amount is the reasonable value of services provided. Wisconsin Stat. § 49.43(1)[4] defines "charge" for Medical Assistance purposes as "the customary, usual and reasonable demand for payment as established. . .by the department. . .which does not exceed the general level of charges by others who render such service or care. . .under similar or comparable circumstances within the community in which the charge is incurred." Therefore, Schelbrock characterizes as irrelevant the testimony accepted by the circuit court relating to the reasonable value of the medical services received by Ellsworth because what the providers charged and collected was the amount paid by Medical Assistance. We disagree.

¶ 17. The collateral source rule seeks to place upon the tortfeasor full responsibility for the loss he has caused. Schelbrock is not entitled to reap the benefit of Ellsworth's eligibility for public assistance or from the government's economic clout in the health care market place. The reimbursement rate that is estab-

[4] Wisconsin Stat. § 49.43(1) was renumbered Wis. Stat. § 49.43(1m) by 1995 Act 27, § 2943.

lished by the state for health care providers participating in the Medical Assistance program is not dispositive. Ellsworth, as the party claiming damages, carries the burden to prove her medical expenses to a reasonable certainty, by the greater weight of credible evidence. Wis JI-Civil 200, 1705. Having done so in this case, she may recover as tort damages the value of these services.

¶ 18. Next, Schelbrock contends that the collateral source rule does not apply in this case because Dunn County, as an agent for the State of Wisconsin, has a right to subrogation under Wis. Stat. § 49.65(2).[5] Under the common law doctrine of subrogation, " 'one, other than a volunteer, who pays for the wrong of another should be permitted to look to the wrongdoer to

---

[5] Wis. Stat. § 49.65(2) Subrogation.

> The department, county or elected tribal governing body providing any public assistance under this chapter as a result of the occurrence of an injury, sickness or death which creates a claim or cause of action, whether in tort or contract, on the part of a public assistance recipient or beneficiary or the estate of a recipient or beneficiary against a 3rd party, including an insurer, is subrogated to the rights of the recipient, beneficiary or estate and may make a claim or maintain an action or intervene in a claim or action by the recipient, beneficiary or estate against the 3rd party.

Wisconsin Stat. § 49.65(2) was renumbered Wis. Stat. § 49.89(2) and amended by 1995 Wis. Act 27, § 3154. The amendment does not impact upon our analysis. 1999 Act 9, § 1489 amended Wis. Stat. § 49.89(2). The amendment provides that Medical Assistance subrogation

> constitutes a lien, equal to the amount of medical assistance provided as a result of the injury, sickness or death that gave rise to the claim. The lien is on any payment resulting from a judgment or settlement that may be due the obligor. A lien under this subsection continues until it is released and discharged by the department of health and family services.

the extent he has paid and be subject to the defenses of the wrongdoer.' " *Waukesha County v. Johnson*, 107 Wis. 2d 155, 160, 320 N.W.2d 1 (Ct. App. 1982) (quoting *Garrity v. Rural Mut. Ins. Co.*, 77 Wis. 2d 537, 541, 253 N.W.2d 512 (1977)). When applying the doctrine of subrogation to private insurance policies, it has been held that where subrogation exists, the collateral source rule does not apply. *Lambert v. Wrensch*, 135 Wis. 2d 105, 121, 399 N.W.2d 369 (1987) (insurance policy found to be an indemnity contract and therefore subrogation exists by operation of law); *Heifetz v. Johnson*, 61 Wis. 2d 111, 124–25, 211 N.W.2d 834 (1973). The doctrine of subrogation operates "to prevent double recovery by the plaintiff. . . ." *Id.* at 125.

¶ 19. Subrogation arises in this case by statute, not common law principles. *DeHaven v. Dan-Co FS Coop.*, 128 Wis. 2d 472, 477, 383 N.W.2d 509 (Ct. App. 1986) ("[T]he department's right of subrogation is not based upon common law principles but rather is granted by virtue of statute. It is statutory subrogation, not common law, and equitable rules in common subrogation do not apply."). Therefore, once the injured party has established the reasonable value of medical services gratuitously provided, the statutory subrogation in Wis. Stat. § 49.65 prevents the injured party from recouping a double recovery through application of the collateral source to Medical Assistance benefits.

¶ 20. While the state recoups from the tortfeasor amounts it expended for medical services, the collateral source rule will "prevent the tortfeasor from benefiting from third-party payments made for the medical services rendered to an injured plaintiff." *Ellsworth*, 229 Wis. 2d at 555. As a result, the

691

responsibility for the victim's loss ultimately remains fully on the wrongdoer.

¶ 21. Finally, Schelbrock contends that Ellsworth has assigned all rights for the collection of medical expenses to the state pursuant to Wis. Stat. § 49.45(19)(a)2, set forth below, and therefore cannot collect any damage award for medical expenses that is not subrogated to the state.[6] We disagree. Wisconsin Stat. § 49.65, not § 49.45(19)(a)2, specifically addresses assignment of actions and subrogation of rights by a public assistance recipient who is injured and has a tort claim against a third party. Within the context of a tort action, the assignment is to the extent that Medical Assistance payments were made for injuries arising as a result of the injury. Wisconsin Stat. § 49.65(5)[7] provides:

> Recovery; How Computed. Reasonable costs of collection including attorney fees shall be deducted first. The amount of assistance granted as a result of the occurrence of the injury, sickness or death shall be deducted next and the remainder shall be

---

[6] Wis. Stat. § 49.45(19) Establishing paternity and assigning support rights.

(a) As a condition of eligibility for medical assistance, a person shall:

. . .

2. Notwithstanding other provisions of the statutes, be deemed to have assigned to the state, by applying for or receiving medical assistance, any rights to medical support or other payment of medical expenses from any other person, including rights to unpaid amounts accrued at the time of application for medical assistance as well as any rights to support accruing during the time for which medical assistance is paid.

[7] Wisconsin Stat. § 49.65(5) was renumbered as Wis. Stat. § 49.89(5) by 1995 Wis. Act 27, § 3164.

paid to the public assistance recipient or other party entitled to payment.

Read together, § 49.65(5) and § 49.45(19)(a)2 assign to the state the amount of assistance expended as a result of the injury by the tortfeasor. The statute contemplates any "remainder" being available for payment to the public assistance beneficiary after the state receives its subrogated amount. Therefore, we find Schelbrock's argument on this point unpersuasive.

¶ 22. In keeping with precedent and well-established tort policy, we conclude that the collateral source rule applies to Medical Assistance benefits. The injured party may establish and recover the reasonable value of the medical services received gratuitously via Medical Assistance. The state's subrogated amount is deducted from this recovery, and the injured party is entitled to any remainder. As a result, the responsibility for the victim's injury remains fully on the wrongdoer.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 23. DIANE S. SYKES, J. *(dissenting).* "In Wisconsin compensatory damages are given to make whole the damage or injury suffered by the injured party." *White v. Benkowski*, 37 Wis. 2d 285, 290, 155 N.W.2d 74 (1967). Past medical and health care expenses are recoverable as compensatory damages where they are reasonably and necessarily incurred for the treatment of injuries sustained by a plaintiff as a result of a defendant's tortious conduct. Wis JI-Civil 1756; *see also Lautenschlager v. Hamburg*, 41 Wis. 2d 623, 630, 165 N.W.2d 129 (1969).

¶ 24. The collateral source rule provides that a plaintiff's recovery " 'will not be reduced by the fact that the medical expenses were paid by some source collateral to the defendant, such as by a beneficial society, by members of the plaintiff's family, by the plaintiff's employer, or by an insurance company.' " *McLaughlin v. Chicago, Milwaukee, St. Paul & Pac. Ry. Co.*, 31 Wis. 2d 378, 396, 143 N.W.2d 32 (1966) (quoting 22 Am. Jur. (2d), *Damages*, § 207, p. 288). The collateral source rule has been extended to cases in which the plaintiff's medical expenses were paid by a government welfare program. *Thoreson v. Milwaukee & Suburban Transp. Co.*, 56 Wis. 2d 231, 243–45, 201 N.W.2d 745 (1972). The policies underlying the collateral source rule are aptly catalogued in the majority opinion and summarized at ¶ 7: "The tortfeasor who is legally responsible for causing injury is not relieved of his obligation to the victim simply because the victim had the foresight to arrange, or good fortune to receive, benefits from a collateral source for injuries and expenses."

¶ 25. So far, there is no controversy. These are well-established principles of the law of damages, and they are fully applicable in this case. Indeed, no one is arguing that Hope Ellsworth's recovery for past medical expenses should be reduced by the amount paid by a source collateral to the tortfeasor, in this case, Medical Assistance. The foregoing authorities establish that it cannot be; the collateral source rule clearly applies to allow recovery for the amounts paid by Medical Assistance. Furthermore, this is not a situation in which the collateral source rule conflicts with the law of subrogation and therefore must give way.[1] The state, through

. [1] The cases involving the interaction between the law of subrogation and the collateral source rule are difficult to recon-

694

Dunn County, is statutorily subrogated. Wis. Stat. § 49.89(2); Wis. Admin. Code § HFS 106.03(8). The application of the collateral source rule—at least to the extent of the Medical Assistance payments—therefore does not frustrate subrogation's goal of preventing double recovery. By operation of the collateral source rule, the amount paid by Medical Assistance is included in the damages award, and by operation of the principles of subrogation, Medical Assistance recoups that amount from the award.

¶ 26. The real question here is not whether the collateral source rule applies but which measure of damages it applies to. The plaintiff put in expert testimony regarding the full retail value of the medical services provided: $597,448.27. The parties stipulated, however, that a discounted amount, $354,941.21, was actually paid by Medical Assistance and was accepted by the medical providers as payment in full pursuant to the rules of the Medical Assistance program. *See* Wis.

---

cile. For example, where an insurer has made payments but is not contractually subrogated and fails to prove equitable subrogation, or has expressly waived subrogation (gratuitously or in favor of some other form of recovery), the collateral source rule generally applies. *See Jindra v. Diederich Flooring*, 181 Wis. 2d 579, 511 N.W.2d 855 (1994); *Voge v. Anderson*, 181 Wis. 2d 726, 512 N.W.2d 749 (1994); *Rixmann v. Somerset Pub. Sch.*, 83 Wis. 2d 571, 266 N.W.2d 326 (1978). On the other hand, where subrogation is present but unenforceable by operation of law (because of the expiration of the statute of limitations), the collateral source rule does not apply. *See Lambert v. Wrensch*, 135 Wis. 2d 105, 399 N.W.2d 369 (1987), *relying on Heifetz v. Johnson*, 61 Wis. 2d 111, 211 N.W.2d 834 (1973). The general rule seems to be that where subrogation is present and the principles of the collateral source rule and subrogation would conflict, subrogation trumps the collateral source rule, and the latter will not apply.

Stats. §§ 49.43(1m), 49.46 and 49.49(3m)(a). The difference—almost $250,000—was absorbed by the providers as legally unrecoverable. The plaintiff can never be held liable for the excess; she has not incurred it. Wis. Admin. Code § HFS 106.04(3). Nevertheless, the circuit court concluded as a matter of law that she was entitled to recover the higher amount.

¶ 27. The applicable jury instruction provides that the measure of damages for past medical expenses is "the sum of money. . .reasonable and necessarily incurred. . .for the care and treatment of the [plaintiff's] injuries." Wis JI-Civil 1756. The defendant argues that the plaintiff's damages cannot encompass the higher retail value of the medical services provided for two reasons: (1) because she never "incurred" that amount; and (2) because the amount paid pursuant to the rules governing Medical Assistance, which was accepted by the medical providers as full payment for their services, constitutes the reasonable value of those services, regardless of whether the providers could have received more from some other person or source.[2] I agree.

¶ 28. While this is an issue of first impression in this state, I am persuaded by the reasoning of the California Court of Appeals in *Hanif v. Housing Authority of Yolo County*, 246 Cal. Rptr. 192 (1988), the Kansas Court of Appeals in *Bates v. Hogg*, 921 P.2d 249 (1996), and the United States District Court for the Western District of Virginia in *McAmis v. Wallace*, 980 F. Supp. 181 (W.D. Va. 1997). All of these cases involved injured

---

[2] Disputes over the "reasonableness" of medical expenses in personal injury actions more commonly focus on whether the plaintiff was overtreated, given the nature and extent of the injury. That type of "reasonableness" evaluation is a question of fact for the jury. This case presents an issue of law.

plaintiffs whose medical expenses were paid by government medical assistance programs. In each, the plaintiff was attempting to recover the difference between the full market value of the medical services and the discounted amount that was paid by the program and accepted by the medical providers as full payment.

¶ 29. The reasoning of the California Court of Appeals in *Hanif* is particularly persuasive:

> Preliminarily, we note there is no question here that Medi-Cal's payment for all injury-related medical care and services does not preclude plaintiff's recovery from defendant, as special damages, of the amount paid. This follows from the collateral source rule. . . . For purposes of analysis, plaintiff is deemed to have personally paid or incurred liability for these services and is entitled to recompense accordingly. This is not unreasonable or unfair in light of Medi-Cal's subrogation and judgment lien rights. . . .

> Nor is there any question about the appropriate measure of recovery: a person injured by another's tortious conduct is entitled to recover the reasonable value of medical care and services reasonably required and attributable to the tort. . . .

> The question here involves the application of that measure, *i.e.*, whether the "reasonable value" measure of recovery means that an injured plaintiff may recover from the tortfeasor more than the actual amount he paid or for which he incurred liability for past medical care and services. Fundamental principles underlying recovery of compensatory damages in tort actions compel the following answer: no.

> "In tort actions damages are normally awarded for the purpose of *compensating* the plaintiff for injury

697

suffered, *i.e.*, restoring him as nearly as possible to his former position, or giving him some pecuniary equivalent.". . .The *primary object of an award of damages* in a civil action, and the fundamental principle on which it is based, are *just compensation* or indemnity for the loss or injury sustained by the complainant, *and no more. . . .*

Applying the above principles, it follows that an award of damages for past medical expenses in excess of what the medical care and services actually cost constitutes overcompensation. . . .

Thus, when the evidence shows a sum certain to have been paid or incurred for past medical care and services, whether by the plaintiff or by an independent source, that sum certain is the most the plaintiff may recover for that care despite the fact it may have been less than the prevailing market rate.

*Hanif*, 246 Cal. Rptr. 192, 194–95 (citations omitted).

¶ 30. *McAmis* and *Bates* involved injured plaintiffs whose medical expenses were paid by Medicaid, and the courts reached similar results. The United States District Court in *McAmis* summarized its holding in this way:

Since Plaintiff did not incur the written-off amounts, they cannot be included in any compensatory damage award she may receive. In order to make Plaintiff whole, to reimburse her for costs expended as a result of this accident, Plaintiff need only receive the actual costs of medical care borne by Medicaid. These are the amounts that Plaintiff has incurred for purposes of the collateral source rule. While Plaintiff was not able to pay her medical bills herself, under the collateral source rule, she may deserve to be compensated for what Medicaid paid as if these benefits were insurance. . . . Defen-

dant is not permitted to avoid compensating his victim merely because she was able to qualify for Medicaid benefits. At the same time, Plaintiff only receives compensation sufficient to make her whole.

*McAmis*, 980 F. Supp. at 185 (citations omitted).

¶ 31. I agree with the reasoning of these courts, and conclude it is fully consistent with Wisconsin law. Since the plaintiff never incurred medical expenses at the higher retail cost, her measure of damages cannot encompass that amount. The value of the medical services necessary to treat the plaintiff's injuries is not what the medical providers might have been able to charge and recover from someone else (say, someone with private, fee-for-service insurance, or someone with the financial wherewithal to pay the highest market rate) but what they accepted as full payment for the services reasonably and necessarily rendered *in this case*. In other words, the measure of damages is not what the highest payor would have paid for the same medical services but what was actually incurred in the care and treatment of the plaintiff's injuries. Thus, the plaintiff's measure of damages in this case is that which Medical Assistance paid and the medical providers accepted as payment in full for the services rendered. By this measure, the defendant is not relieved of responsibility for his tortious conduct, and the plaintiff is made whole. Accordingly, I respectfully dissent.

¶ 32. I am authorized to state that Justices JON P. WILCOX and N. PATRICK CROOKS join this dissent.