STATE of Wisconsin, Plaintiff-Respondent,

v.

Troy B. BAKER, Defendant-Appellant.

Court of Appeals

*No. 99–3347–CR. Submitted on briefs June 23, 2000.—Decided March 29, 2001.*

## 2001 WI App 100

(Also reported in 626 N.W.2d 862.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William E. Schmaal* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Jeffrey J. Kassel*, assistant attorney general.

Before Dykman, P.J., Roggensack and Deininger, JJ.

¶ 1. DYKMAN, P.J. Troy B. Baker appeals from a judgment[1] convicting him of sexual assault of a child and from an order denying his motion for postconviction relief. Baker argues that the trial court erred in ordering him to pay restitution to Vernon County Department of Human Services (DHS) because the county could not be reimbursed as a victim of his crime and because Medical Assistance could not be considered an insurer under the restitution statute. We conclude that the county need not have been a victim and that it is entitled to reimbursement as an insurer who has compensated a victim. Therefore, the trial court properly ordered Baker to reimburse Vernon County DHS. Baker also argues that the trial court lacked authority to order that restitution be withheld from his prison wages. We disagree and conclude that the applicable statutes authorize disbursement from prison wages. We therefore affirm.

## I. Background

¶ 2. Baker sexually assaulted Elizabeth G., a minor, in September 1998. After the assault, Elizabeth G. underwent a medical examination, pregnancy testing, and sexually transmitted disease testing at a La Crosse hospital. According to the State, Vernon County DHS paid $104.37 via Medical Assistance for Elizabeth G.'s hospital expenses. After a guilty plea, Baker was

---

[1] The judgment of conviction was dated March 22, 1999. A second judgment of conviction dated March 25, 1999, also appears in the record, but its purpose seems limited to amending the sentence credit due Baker from 113 to 176 days and incorporating the restitution order.

convicted of first-degree sexual assault of a child in violation of WIS. STAT. § 948.02(1) (1995–96).

¶ 3. The trial court ordered Baker to pay the $104.37 as restitution and directed that payment be made to Vernon County DHS. The trial court also ordered Baker to pay other restitution amounts directly to Elizabeth G. totaling $262.51. Finally, the trial court directed that the restitution sums be withheld from any prison wages Baker might earn. In a postconviction motion, Baker asked the trial court to vacate the restitution order and the portion of the judgment of conviction directing him to pay Vernon County DHS and authorizing that restitution payments be withheld from his prison wages and accounts. The trial court denied the motion, and Baker appeals.

## II.  Analysis

¶ 4. This case presents questions involving the interpretation and application of the restitution statute as well as the scope of the trial court's authority under that statute. These are questions of law that we review de novo. *State v. Howard-Hastings*, 218 Wis. 2d 152, 154, 579 N.W.2d 290 (Ct. App. 1998) (interpretation of statute); *State v. Boffer*, 158 Wis. 2d 655, 658, 462 N.W.2d 906 (Ct. App. 1990) (scope of trial court's authority).

### A.  *Medical Assistance As Insurer under* WIS. STAT. *§ 973.20(5)(d)*

¶ 5. WISCONSIN STAT. § 973.20 (1999–2000),[2] the restitution statute, provides the trial court with a num-

---

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

ber of options in ordering restitution.[3] The breadth of the statute is limited by subsec. (1r), which provides that a defendant generally may be ordered to make restitution only to "any victim of a crime considered at sentencing . . . ."[4] However, at least one subsection of § 973.20 unambiguously provides for restitution to a party other than the victim:

> (5)  In any case, the restitution order may require that the defendant do one or more of the following:
>
> . . . .
> (d)  If justice so requires, reimburse any insurer, surety or other person who has compen-

---

[3] The options are so numerous that, in the interest of space, we do not recite them all here. One subsection of WIS. STAT. § 973.20 provides the following modes of restitution:

> (5)  In any case, the restitution order may require that the defendant do one or more of the following:
> (a)  Pay all special damages, but not general damages, substantiated by evidence in the record, which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing.
> (b)  Pay an amount equal to the income lost, and reasonable out-of-pocket expenses incurred, by the person against whom a crime considered at sentencing was committed resulting from the filing of charges or cooperating in the investigation and prosecution of the crime.
> (c)  Reimburse any person or agency for amounts paid as rewards for information leading to the apprehension or successful prosecution of the defendant for a crime for which the defendant was convicted or to the apprehension or prosecution of the defendant for a read-in crime.
> (d)  If justice so requires, reimburse any insurer, surety or other person who has compensated a victim for a loss otherwise compensable under this section.

[4] "Crime considered at sentencing" is limited to "any crime for which the defendant was convicted and any read-in crime." WIS. STAT. § 973.20(1g)(a).

sated a victim for a loss otherwise compensable under this section.

Thus, § 973.20(5)(d) permits payment to a third person rather than the victim of the crime. *See Boffer,* 158 Wis. 2d at 661.

¶ 6.    Relying on *State v. Schmaling,* 198 Wis. 2d 756, 761, 543 N.W.2d 555 (Ct. App. 1995), Baker nevertheless argues that Vernon County DHS cannot be reimbursed under the restitution statute because it is not an actual victim of his crime. In *Schmaling,* the defendant faced seven felony counts relating to a freeway accident that caused a tanker to burst into flames. *Id.* at 758. The trial court ordered the defendant to pay restitution, including fire fighting and cleanup expenses that the county incurred. *Id.* at 759. We reversed, concluding that the county could not recover restitution for fire fighting and cleanup expenses because it was not the "actual victim" of the defendant's crimes. *Id.* at 761.

¶ 7.    Our decision in *Schmaling* is readily distinguishable because we were not interpreting or applying WIS. STAT. § 973.20(5)(d), and we therefore did not address whether the fire department was acting as an "insurer, surety or other person." The State's argument, which we rejected, was that the fire department expenses were "special damages" under subsec. (5)(a) of the restitution statute. *Schmaling,* 198 Wis. 2d at 760–61.

¶ 8.    Baker also argues that, at least in this case, Medical Assistance cannot be considered an insurer under WIS. STAT. § 973.20(5)(d)[5] because the victim of

___

[5] Baker refers to WIS. STAT. § 973.20(4)(d) in his briefs, but it is clear from his argument that he intended to refer to § 973.20(5)(d).

his crime, Elizabeth G., failed to present evidence that the program was obligated to make the $104.37 payment or that it had a "subrogation-type relationship" with Elizabeth G. as would a private insurer. According to Baker, Elizabeth G. thus failed to carry her burden of proof under § 973.20(14)(a). We disagree.

¶ 9. WISCONSIN STAT. § 973.20(14)(a) states in relevant part: "The burden of demonstrating by the preponderance of the evidence the amount of loss sustained by a victim as a result of a crime considered at sentencing is on the victim." This language refers to the victim's burden of proof only as to the *amount* of loss sustained *by the victim*. Nothing in the language of § 973.20(14)(a) suggests that the victim carries a similar burden to show an insurer's obligation to pay or the existence of an insurer's right to subrogation.

¶ 10. We also construe Baker's reliance on WIS. STAT. § 973.20(14)(a) as an assertion that Medical Assistance is not, as a matter of law, an "insurer, surety or other person who has compensated a victim" for purposes of § 973.20(5)(d). However, we reject this assertion as well.

¶ 11. The plain language of WIS. STAT. § 973.20(5)(d) suggests no distinction between a private insurer and public insurer. Section 973.20(5)(d) simply states that a restitution order may provide for reimbursement of an "insurer, surety or other person who has compensated a victim." While Medical Assistance is a social welfare program, it is the equivalent of health insurance. *See Ellsworth v. Schelbrock*, 2000 WI 63, ¶ 11, 235 Wis. 2d 678, 611 N.W.2d 764; *Tannler v. DHSS*, 206 Wis. 2d 386, 388, 557 N.W.2d 434 (Ct. App. 1996), *aff'd*, 211 Wis. 2d 179, 564 N.W.2d 735 (1997). Private insurance companies pay benefits only to their

insureds; however, they must pay benefits to those insureds. Similarly, Medical Assistance pays for health care services only for those who meet strict eligibility criteria; however, Medical Assistance must pay benefits on behalf of those who meet the criteria. *See* WIS. STAT. § 49.47(1)-(6); *Tannler*, 206 Wis. 2d at 388. Just as private insurers do not normally make payments on behalf of insureds unless they are required to do so by contract, Medical Assistance does not normally pay for health services it is not required to pay by law.

■

¶ 12.    Private insurers may have a right to subrogation against their insureds under the insurance contract or, under some circumstances, by operation of law. *See Lambert v. Wrensch*, 135 Wis. 2d 105, 116–17, 399 N.W.2d 369 (1987). The State and county, in their role as providers of Medical Assistance, also have a right to subrogation, although it is statutorily created. *See* WIS. STAT. § 49.89(2); *Ellsworth*, 2000 WI 63 at ¶ 19.[6] We have held that, under some circumstances, § 49.89 provides the State and county with an even more extensive right to subrogation than would be

---

[6] WISCONSIN STAT. § 49.89(2) states in part:

SUBROGATION. The department of health and family services, the department of workforce development, a county or an elected tribal governing body that provides any public assistance under this chapter or under s. 253.05 as a result of the occurrence of an injury, sickness or death that creates a claim or cause of action, whether in tort or contract, on the part of a public assistance recipient or beneficiary or the estate of a recipient or beneficiary against a 3rd party, including an insurer, is subrogated to the rights of the recipient, beneficiary or estate and may make a claim or maintain an action or intervene in a claim or action by the recipient, beneficiary or estate against the 3rd party.

available under the common law. *See Coplien v. DHSS*, 119 Wis. 2d 52, 56–57, 349 N.W.2d 92 (Ct. App. 1984).[7]

¶ 13.　Based on the plain language of WIS. STAT. § 973.20(5)(d), the nature of Medical Assistance, and the State and county's right to subrogation under WIS. STAT. § 49.89(2), we conclude that Medical Assistance is an insurer like any other for purposes of § 973.20(5)(d).[8] Victims need not present evidence of the government's obligation to pay or of its subrogation relationship in each case, and the trial court properly ordered Baker to make restitution to Vernon County DHS under § 973.20(5)(d).[9]

---

[7] In *Coplien v. DHSS*, 119 Wis. 2d 52, 54, 349 N.W.2d 92 (Ct. App. 1984), we were interpreting what was then WIS. STAT. § 49.65 (1981–82). Section 49.65 was amended and renumbered to WIS. STAT. § 49.89. *See* 1995 Wis. Act 27, § 3152. However, the amendment does not change our analysis. Section 49.89(2) has also been amended to provide that Medical Assistance subrogation constitutes a lien, *see* 1999 Wis. Act 9, § 1489, however, this does not affect our analysis either.

[8] Having concluded that Medical Assistance is an "insurer, surety or other person" under WIS. STAT. § 973.20(5)(d), we need not address Baker's argument that the Medical Assistance payments were not taxable as costs under WIS. STAT. § 973.06.

[9] While the state and federal government are jointly responsible for funding Medical Assistance, *see Ellsworth v. Schelbrock*, 2000 WI 63, ¶ 10, 235 Wis. 2d 678, 611 N.W.2d 764, the state typically delegates administration of the program to county human and social service agencies, *see* WIS. STAT. § 49.45(2)(a)3. In this case, it appears that Vernon County DHS disbursed payment for Elizabeth G.'s medical services, and was therefore the proper agency for reimbursement under WIS. STAT. § 973.20(5)(d).

*B. Restitution Withheld from Prison Wages*

¶ 14.    Baker next argues that the trial court had no authority to order that restitution be withheld from his prison wages. He asserts that under the Wisconsin penal scheme, the Department of Corrections (DOC), not the trial court, is charged with running state prisons, and that even the DOC's authority to disburse prison wages is limited under WIS. STAT. chs. 301 and 303.

¶ 15.    WISCONSIN STAT. § 973.20 contains several provisions that bestow authority on the trial court to fashion an order to achieve the goals of the restitution statute. Under § 973.20(10), the trial court may require a defendant to pay restitution "immediately, within a specified period or in specified instalments." Under § 973.20(7), if the court orders restitution for more than one person, "the court may direct the sequence in which payments are to be transferred . . . ." Section 973.20(11)(a) states that "the restitution order shall require the defendant to deliver the amount of money or property due as restitution to the [DOC] for transfer to the victim or other person to be compensated . . . ."

¶ 16.    In addition, WIS. STAT. § 973.20(11)(b) requires the DOC to "establish a separate account for each person in its custody or under its supervision ordered to make restitution for the collection and disbursement of funds." Based on these provisions in § 973.20, the State contends that, by ordering disbursement from prison wages, the trial court was merely implementing the statutory scheme.

██

¶ 17.    Baker argues that the DOC's authority to disburse prison wages is strictly circumscribed by other statutes. He refers us to WIS. STAT. § 301.31, which states:

**Wages to prisoners.** The [DOC] may provide for assistance of prisoners on their discharge; for the support of their families while the prisoners are in confinement; or for the payment, either in full or ratably, of their obligations acknowledged by them in writing or which have been reduced to judgment by the allowance of moderate wages . . . . Until the prisoner's final discharge, the funds arising from the wages shall be under the control of the officer in charge of the institution and shall be used for the benefit of the prisoner, the prisoner's family and other obligations specified in this section. Earnings by inmates working in the prison industries and the retention and distribution thereof shall be governed by ss. 303.01(4) and (8) and 303.06(2).

WISCONSIN STAT. § 303.01(4) pertains to wage standards and WIS. STAT. § 303.06(2) pertains to sale of prison products. We agree that § 303.01(8) provides guidelines regarding the allowable prison wage distributions that concern us here. Section 303.01(8) enumerates specific purposes for which the DOC must distribute earnings of an inmate. That section reads in part:

(b)   The [DOC] shall distribute earnings of an inmate or resident, other than an inmate or resident employed under sub. (2)(em), for the crime victim and witness assistance surcharge under s. 973.045(4), for the delinquency victim and witness assistance surcharge under s. 938.34(8d)(c), for the deoxyribonucleic acid analysis surcharge under s. 973.046(4) and for compliance with s. 303.06(2) and may distribute earnings for the support of the inmate's or resident's dependents and for other obligations either acknowledged by the inmate or resident in writing or which have been reduced to judgment that may be satisfied according to law.

87

A provision specifically allowing for distributions for restitution is absent. However, we conclude that a judgment of conviction including an order to pay restitution is an "other obligation[ ] . . . reduced to judgment that may be satisfied according to law." Therefore, § 303.01(8)(b) gives the trial court the authority to order restitution be disbursed from prison wages.

¶ 18. In *State v. Evans*, 2000 WI App 178, ¶ 11, ¶ 16, 238 Wis. 2d 411, 617 N.W.2d 220, *review denied*, 2001 WI 1, 239 Wis. 2d 773, 621 N.W.2d 629, a case decided after the parties submitted their briefs, we reversed a trial court's decision to order disbursement from a defendant's prison earnings. However, *Evans* does not preclude our decision here. In *Evans*, we examined WIS. STAT. § 973.20(13)(c), which sets out four separate procedures for a trial court to use when the restitution amount cannot be determined at the sentencing hearing. *Id.* at ¶¶ 13–14. The trial court in *Evans* deviated from the four permissible procedures, and instead ordered the defendant to pay restitution "up to 25 percent of his prison earnings account." *Id.* at ¶ 11. The trial court in *Evans* did not set a specific amount of restitution, and we noted that the amount "might turn out to be anything." *Id.* at ¶ 15. Thus, our focus in *Evans* was not on the fact that the trial court ordered restitution from prison earnings, but that the trial court's action referred the determination of the amount of restitution to the DOC. *Id.* That is not a concern before us here.

¶ 19. In sum, we conclude that the trial court properly ordered restitution payable to Vernon County DHS, and that restitution may be disbursed from Baker's prison wages.

*By the Court.*—Judgment and order affirmed.