KLOPPENBURG, J.
*580 ¶1 Wisconsin Department of Corrections Secretary Jon Litscher dismissed Drazen Markovic's inmate complaint, which alleged that DOC acted without authority when it took money out of Markovic's prison account beginning in 2016.[1] DOC took the money to satisfy unpaid restitution ordered in a 1995 judgment that imposed a sentence that Markovic completed in 2002. Markovic petitioned the circuit court for a writ of certiorari. The circuit court reversed DOC's decision, concluding that DOC lost its authority to take money out of Markovic's prison account to satisfy the unpaid restitution after Markovic completed the sentence imposed in the judgment *581 that ordered the restitution. As a remedy, the court ordered DOC to return to Markovic the money it took out of his prison account. *205 ¶2 On appeal, DOC raises two issues: (1) whether DOC acted within its authority when it took money out of Markovic's prison account beginning in 2016 to satisfy unpaid restitution ordered in a judgment that imposed a sentence that Markovic completed in 2002; and (2) if DOC acted without authority, whether the circuit court in this certiorari action lacked authority to order DOC to return to Markovic the money it improperly took out of his prison account.
¶3 On the first issue, DOC argues that both WIS. STAT. §§ 303.01(8)(b) and 301.32(1) (2015-16) "independently provide DOC with authority to collect restitution" ordered in a judgment that imposes a sentence that a defendant has completed.[2] These statutes govern DOC's authority to use distinct sources of inmate money for distinct purposes. Pertinent here, WIS. STAT. § 303.01(8)(b) governs the authority of DOC to "distribute [an inmate's] earnings for ... obligations ... which have been reduced to judgment that may be satisfied according to law"; and WIS. STAT. § 301.32(1) governs the authority of DOC to use money that has been "delivered" to an inmate's prison account "for ... the benefit of the prisoner." As we will explain, we conclude that:
(1) DOC was not authorized under § 303.01(8)(b) to take Markovic's earnings to satisfy unpaid restitution *582 ordered in a judgment that imposed a sentence that he had completed because: the restitution ordered was a condition of parole; conditions of parole do not survive the completion of a sentence; and, therefore, the restitution ordered was not an "obligation" that "may be satisfied according to law" within the meaning of the statute after Markovic completed the sentence; and DOC points to no law to the contrary;
(2) DOC was authorized under § 301.32(1) to take money delivered to Markovic's prison account to satisfy unpaid restitution ordered in the judgment that imposed the sentence that he had completed, because using that money to pay restitution to the victim of his crime is "for [his] benefit" within the meaning of the statute, regardless of whether the restitution ordered in the judgment is directly enforceable against him.
¶4 On the second issue, we conclude that the circuit court erred in ordering DOC to return any money it improperly took from Markovic's prison earnings because, under controlling case law, the payment of money damages is not available as a remedy in certiorari actions, and Markovic fails to point to any exception to this rule. Accordingly, we affirm in part and reverse in part.
BACKGROUND
¶5 Markovic was convicted in 1995 of theft by fraud. The sentencing court entered a judgment of conviction imposing a sentence comprising seven years' imprisonment along with $4,214.20 in restitution as a "condition[ ] of sentence[ ]." Markovic completed the seven-year sentence in the 1995 case in *583 December 2002 without ever serving parole. However, he remained in prison on another sentence in a different case. *206 ¶6 Markovic was still in prison on the other sentence when, in November 2016, fourteen years after he had completed his sentence in the 1995 case, DOC began taking money out of his prison account to satisfy the unpaid restitution ordered in the 1995 case. Markovic's prison account includes his prison earnings and money delivered to DOC for the benefit of Markovic from outside the prison.
¶7 Markovic filed a complaint in the DOC inmate complaint review system, alleging that DOC did not have authority to take money out of his prison account to satisfy the unpaid restitution ordered relating to his 1995 sentence, which he completed in 2002. The Institution Complaint Examiner recommended that the complaint be dismissed, noting that DOC would continue to take money out of Markovic's account so long as DOC's internal database showed an unpaid restitution obligation. The warden accepted the examiner's recommendation and dismissed Markovic's complaint. Markovic then appealed to the DOC secretary, who also accepted the examiner's recommendation and dismissed the appeal.
¶8 Markovic petitioned for certiorari review.[3] The circuit court reversed, concluding that DOC lost *584 authority to take money out of Markovic's prison account to satisfy the unpaid restitution after he completed his 1995 sentence. As a remedy, the court ordered DOC to return to Markovic the money it took. The State appeals.
DISCUSSION
¶9 On certiorari we review the agency decision, not the decision of the circuit court. State ex rel. Curtis v. Litscher , 2002 WI App 172, ¶10, 256 Wis. 2d 787, 650 N.W.2d 43. We are limited to the following four inquiries:
(1) whether [DOC] acted within the bounds of its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive, or unreasonable, and represented its will, and not its judgment; and (4) whether the evidence was sufficient that [DOC] might reasonably make the determination that it did.
State ex rel. Greer v. Wiedenhoeft , 2014 WI 19, ¶35, 353 Wis. 2d 307, 845 N.W.2d 373 (quoted source omitted). The two inquiries on which we base our decision, whether DOC acted within its jurisdiction and according to law, are questions of law that we review de novo. State ex rel. Sprewell v. McCaughtry , 226 Wis. 2d 389, 393, 595 N.W.2d 39 (Ct. App. 1999).
¶10 To repeat, this appeal requires that we answer the following two questions: (1) whether DOC acted within its authority, and therefore within its jurisdiction and according to law, when it took money out of Markovic's prison account beginning in 2016 to satisfy unpaid restitution ordered in the 1995 judgment *585 that imposed a sentence that he completed in 2002; and (2) if not, whether the circuit court in this certiorari action lacked authority to order DOC to return to Markovic the money it improperly took out of his prison account. We address each question in turn.
I. Whether DOC Acted Within its Jurisdiction and According to Law
¶11 DOC argues that it acted within its jurisdiction and according to law because it had authority under both *207 WIS. STAT. §§ 303.01(8)(b) and 301.32(1) to take money out of Markovic's prison account to satisfy unpaid restitution ordered in the 1995 judgment that imposed the sentence that he completed in 2002.
¶12 DOC's argument requires that we interpret various statutory provisions. "The purpose of statutory interpretation is to discern the intent of the legislature." Juneau Cty. v. Associated Bank, N.A. , 2013 WI App 29, ¶16, 346 Wis. 2d 264, 828 N.W.2d 262. When we interpret a statute, we begin with the statute's plain language, because we assume that the legislature's intent is expressed in the words it used. Id. ; State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶¶44-45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, in relation to the language of surrounding or closely related statutes, and in a reasonable manner, to avoid absurd or unreasonable results. Kalal , 271 Wis. 2d 633, ¶46, 681 N.W.2d 110.
¶13 We address each of the statutes on which DOC relies in turn.
*586 A. WIS. STAT. § 303.01(8)(b)
¶14 WISCONSIN STAT. § 303.01(8)(b) governs the authority of DOC to "distribute earnings of an inmate" and provides, in pertinent part, that DOC "may distribute earnings for ... obligations ... which have been reduced to judgment that may be satisfied according to law." There is no dispute that the restitution ordered in Markovic's 1995 case was "reduced to judgment." The question is whether, after Markovic completed his 1995 sentence, the restitution ordered was an "obligation[ ] ... that may be satisfied according to law." As we now explain, the answer is no.
1. The Statutes Tie Markovic's Obligation to Pay Restitution to Service of His Sentence
¶15 As stated, the judgment of conviction in Markovic's 1995 case imposed a sentence of seven years' imprisonment and ordered $4,214.20 in restitution as a "condition[ ] of sentence[ ]." Under WIS. STAT. § 973.20(1r) (1995-96), restitution "is a condition of probation or parole served." Because Markovic was convicted in 1995 and his sentencing was subject to pre-Truth in Sentencing law, he was eligible for parole after serving twenty-five percent of his sentence under WIS. STAT. § 304.06(1)(b) (1995-96). See State v. Gallion , 2004 WI 42, ¶28, 270 Wis. 2d 535, 678 N.W.2d 197 (under the pre-Truth in Sentencing system, "[t]he legislature set the maximum penalty ...; the courts imposed an indeterminate term; and the ... parole board[ ] determined how much of that term was going to be served"); State v. Borrell , 167 Wis. 2d 749, 764, 482 N.W.2d 883 (1992) (a pre-Truth in Sentencing case in which the court noted that a "convicted defendant is generally eligible for parole release after serving 25 *587 percent of his or her sentence"); c.f. WIS. STAT. § 973.01(1), (6) (1997-98) (establishing Truth in Sentencing, without eligibility for release on parole, for felonies committed on or after December 31, 1999). From the record it is apparent that Markovic served his entire seven-year sentence in prison without being released on parole.
¶16 DOC seemingly argues that the restitution ordered in Markovic's 1995 judgment of conviction was an order that had a life apart from the prison sentence imposed in that same order-that is, that the restitution order did not expire when the sentence was completed and, therefore, remained an enforceable order in the judgment of conviction. If DOC means to make this argument, DOC fails to take into account the controlling statutory scheme, which directs that restitution is a condition of parole served which, necessarily, ties the restitution obligation to service of the sentence imposed.
*208 ¶17 WISCONSIN STAT. § 973.20(1r) (1995-96) provides that "[r]estitution ordered under this section is a condition of probation or parole served." To state the obvious, parole does not survive the expiration of a sentence. See , e.g. , WIS. STAT. § 302.11(6) (providing that an inmate released on parole "is subject to all conditions and rules of parole until the expiration of the sentence").
¶18 It follows that, under the plain language of WIS. STAT. § 973.20(1r) (1995-96), conditions of parole do not survive the completion of a sentence, which means that Markovic was subject to the restitution order in the 1995 judgment only until his sentence ended in December 2002. At that point, although Markovic actually served no parole time, the possibility *588 of his serving parole ended as did the possibility of his satisfying any condition of parole, including the restitution ordered in the 1995 case, which by operation of the statute, was a condition of his parole.
¶19 Therefore, we conclude as follows: (1) because Markovic's restitution was, statutorily, a condition of parole served, (2) because any possibility of serving parole did not survive the expiration of Markovic's sentence in 2002, and (3) because no other authority applies here to create an enforceable obligation that survives the expiration of Markovic's sentence, it follows that the restitution ordered in Markovic's 1995 judgment of conviction was no longer an "obligation[ ] ... that may be satisfied according to law" pursuant to WIS. STAT. § 303.01(8)(b) after 2002. We acknowledge that there is an apparent disconnect between the statutory directive that restitution is a condition of "parole served " and the notion that Markovic was ever obligated to pay restitution. We address that topic in the next subsection.
2. State v. Baker
¶20 Notwithstanding the plain language of WIS. STAT. §§ 973.20(1r) (1995-96) and 303.01(8)(b), DOC argues that its actions are authorized under State v. Baker , 2001 WI App 100, 243 Wis. 2d 77, 626 N.W.2d 862. More specifically, DOC argues that § 303.01(8)(b), as interpreted in Baker , provides authority for DOC to collect funds from Markovic's prison account because Markovic remained in DOC custody. However, as we explain, this reading of Baker fails to come to grips with the difference between the source of the legal obligation in Baker and DOC's authority to act, once there is a legal obligation.
*589 ¶21 In Baker , as pertinent here, this court began by addressing whether the circuit court had the authority to order DOC to withhold restitution from Baker's prison earnings. 243 Wis. 2d 77, ¶¶15-16, 626 N.W.2d 862. We concluded that "several" provisions of WIS. STAT. § 973.20 (1995-96) provided such authority. Baker , 243 Wis. 2d 77, ¶15, 626 N.W.2d 862. Most prominently, we concluded that § 973.20(10) provided authority for the circuit court's directive to DOC because that statute authorized a court to require a defendant to pay restitution "immediately." Baker , 243 Wis. 2d 77, ¶15, 626 N.W.2d 862.
¶22 We then turned our attention to Baker's argument that DOC's authority to collect from prison earnings was limited by WIS. STAT. §§ 301.31 and 303.01. Baker , 243 Wis. 2d 77, ¶17, 626 N.W.2d 862. We rejected this argument and observed that, to the contrary, WIS. STAT. § 303.01(8)(b) authorized DOC to distribute earnings of an inmate to satisfy "obligations ... which have been reduced to judgment that may be satisfied according to law." Baker , 243 Wis. 2d 77, ¶17, 626 N.W.2d 862. Having separately concluded that the circuit court's order directing DOC to withhold *209 restitution from Baker's prison earnings was lawful, it followed that DOC had the authority to act, because there was an enforceable obligation reduced to judgment within the meaning of § 303.01(8)(b). Baker , 243 Wis. 2d 77, ¶17, 626 N.W.2d 862.
¶23 DOC appears to treat Baker 's discussion of the "obligations ... which have been reduced to judgment that may be satisfied according to law" language as providing authority for the proposition that Markovic, in 2016, had an enforceable obligation to pay the restitution ordered in his 1995 judgment of conviction. More specifically, DOC's argument presupposes that under Baker , WIS. STAT. § 303.01(8)(b) itself creates the "obligation" on which DOC was authorized to collect.
*590 That is patently incorrect. Nothing in Baker or § 303.01(8)(b) provides support for that proposition. To the contrary, at the point in Baker where we addressed § 303.01(8)(b), we had already identified the circuit court's authority to create the obligation and we simply concluded that nothing in § 303.01(8)(b) impeded DOC from executing the circuit court's order. Baker , 243 Wis. 2d 77, ¶¶15, 17, 626 N.W.2d 862.
¶24 Before moving on, we note that our discussion of the circuit court's authority in Baker did not cite or discuss the language in WIS. STAT. § 973.20(1r) (1995-96) specifying that restitution ordered in connection with the imposition of a prison sentence is a "condition of ... parole served." The parties' briefing in Baker similarly ignored this language. We find it difficult to reconcile the directive that restitution ordered in this circumstance is a condition of "parole served" with the idea, assumed but not discussed in Baker , that a defendant is obligated to pay restitution even before it is known whether the defendant will ever serve parole.
¶25 However, this observation does not affect our decision here. Accepting as we must that, under Baker , Markovic had an enforceable legal obligation to pay restitution while in prison serving his 1995 sentence, DOC points to no language in Baker that could be read to suggest that restitution ordered as a condition of parole in connection with the imposition of a sentence survives the completion of the sentence. That is, even accepting the proposition that a circuit court may order DOC to collect restitution prior to service of parole, Baker does not address DOC's authority to collect, or the circuit court's authority to order DOC to collect, restitution after completion of a sentence.
*591 ¶26 In sum, regardless of whether we correctly determined in Baker that a defendant may be required to pay restitution during service of a prison term, prior to service of parole, we discern no legal theory that would support the idea that a condition of parole can be enforced after the sentence has been completed.
3. DOC's Additional Arguments
¶27 DOC makes two additional arguments as to why we should nevertheless conclude that WIS. STAT. § 303.01(8)(b) authorizes its actions here. We address and reject each argument as follows.
¶28 First, DOC argues that, because there are "other collection methods [that] persist after a sentence ends," namely, under WIS. STAT. §§ 973.20(1r) (civil judgments enforceable by victims) and 973.20(10)(b) (certification to the Department of Revenue), "[t]here is no good reason why" DOC's authority under WIS. STAT. § 303.01(8)(b) to take inmates' prison earnings cannot also extend to satisfy unpaid restitution after the sentence imposed in the judgment ordering the restitution has been completed. This argument fails because it is not tied to statutory language. The legislature no doubt could have crafted *210 § 303.01(8)(b) like other statutes that create a mechanism for collecting unpaid restitution after a sentence is completed and, thereby create, in the words of § 303.01(8)(b), an "obligation[ ] ... reduced to judgment that may be satisfied according to law." But § 303.01(8)(b) does not do so.
¶29 In our view, these other statutes actually undercut DOC's position precisely because they expressly create collection mechanisms that extend a defendant's obligation to pay unpaid restitution.
*592 WIS CONSIN STAT. §§ 973.20(1r) and 973.20(10)(b) speak to the specific power of specific parties to collect unpaid restitution following the completion of the sentence imposed in the judgment ordering the restitution. In sharp contrast, WIS. STAT. § 303.01(8)(b) contains no language specifying that DOC has authority to collect unpaid restitution following the completion of the sentence imposed in the judgment ordering the restitution. See Kimberly-Clark Corp. v. Public Serv. Comm'n of Wisconsin , 110 Wis. 2d 455, 463, 329 N.W.2d 143 (1983) ("where a statute with respect to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant in showing that a different [legislative] intention existed") (quoting State v. Welkos , 14 Wis. 2d 186, 192, 109 N.W.2d 889 (1961) ). That the legislature has granted specific authority to identified parties to satisfy unpaid restitution following the completion of the sentence ordering the restitution only highlights the absence of DOC's authority in this regard.
¶30 Second, DOC argues that "the constitutional policy of ensuring that crime victims obtain restitution" supports DOC's actions here. This argument amounts to a request that we "legislate from the bench" to fill in a gap posited by DOC's arguments addressed and rejected above. "Public policy on a given subject is determined either by the constitution itself or by statutes passed within constitutional limitations.... When acting within constitutional limitations, the legislature settles and declares the public policy of a state, and not the court." Progressive Northern Ins. Co. v. Romanshek , 2005 WI 67, ¶60, 281 Wis. 2d 300, 697 N.W.2d 417 (quoted source omitted).
*593 Because we have concluded that DOC lacked statutory authority to take Markovic's earnings under WIS. STAT. § 303.01(8)(b), its policy argument is unavailing as a legal argument to this court.
¶31 In sum, WIS. STAT. § 303.01(8)(b) is limited to the topic of DOC's authority to take Markovic's earnings and, on that topic, DOC fails to show why that statute directs that the unpaid restitution ordered in the judgment imposing his sentence survived as an enforceable obligation after Markovic completed the sentence.
B. WIS. STAT. § 301.32(1)
¶32 The second statute on which DOC relies is WIS. STAT. § 301.32(1). Section 301.32(1) provides, in pertinent part, that money "delivered to an employee of any state correctional institution for the benefit of a prisoner ... may be used ... under the direction and with the approval of the superintendent or warden and for ... the benefit of the prisoner." DOC argues that its action in this case was authorized under § 301.32(1) because, in DOC's words, "it benefits prisoners to satisfy outstanding restitution obligations." We agree, based on our conclusion that the case law on restitution, discussed below, holds that defendants "benefit" from being required to contribute toward making their victims whole and that the reasoning underlying this holding applies even in the absence of a legal obligation to pay restitution.
¶33 Wisconsin courts have long recognized the benefits to defendants from enforcing *211 restitution ordered in a judgment that imposes a sentence. See *594 Huggett v. State , 83 Wis. 2d 790, 798, 266 N.W.2d 403 (1978) ("Restitution can aid an offender's rehabilitation by strengthening the individual's sense of responsibility," teaching the offender "to consider more carefully the consequences of his or her actions," and giving an offender who successfully makes restitution "a positive sense of having earned a fresh start and ... tangible evidence of his or her capacity to alter old behavior patterns and lead a law-abiding life"); State v. Knoll , 2000 WI App 135, ¶16, 237 Wis. 2d 384, 614 N.W.2d 20 (one of restitution's "primary purposes is to rehabilitate a defendant"). In light of the recognized connection between paying restitution to victims and rehabilitation, it is reasonable to conclude that DOC properly used money delivered to Markovic's prison account "for the benefit of" Markovic under WIS. STAT. § 301.32(1) when it used that money to satisfy unpaid restitution, even though Markovic completed his sentence imposed in the judgment that ordered the restitution.
¶34 We acknowledge that the authority we cite addresses restitution in the context of orders that are directly enforceable against the defendant. However, regardless of whether Markovic was bound under other statutes to continue paying restitution to his victim after he completed his sentence, we see no reason why the rehabilitation rationale in the case law does not still apply here.
¶35 Markovic's arguments to the contrary are unavailing. First, Markovic argues that WIS. STAT. § 301.32(1) does not directly address DOC's authority to collect unpaid restitution after a defendant has completed his or her sentence. We agree. But, this fact misses the point of what the statute does directly address, namely, use of money delivered to the prison "for ... the benefit of the prisoner." That language *595 evinces the legislature's intent to create a broad catchall provision. See Juneau Cnty. , 346 Wis. 2d 264, ¶16, 828 N.W.2d 262 ("[W]e assume the legislature's intent is expressed in the words it used.") As explained above, we perceive no reason why this catchall provision does not encompass benefitting an offender by aiding the offender's rehabilitation by using money otherwise available to the prisoner to pay unpaid victim restitution, regardless of any legally enforceable obligation to do so.
¶36 Second, Markovic argues that satisfaction of his unpaid restitution does not benefit him because DOC "dropped the ball" by not taking money out of his prison account before he completed his 1995 sentence, and the unpaid restitution is now an "uncollectible civil debt." Even assuming that Markovic is correct as to both these propositions, he fails to explain how DOC's delay or the issue of whether the unpaid restitution is civilly collectible defeats the beneficial connection between restitution and rehabilitation. Because Markovic fails to develop this argument, we do not consider it further. See State v. Flynn , 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343 (Ct. App. 1994) (court need not address issues insufficiently developed, inadequately briefed, or lacking citations to authority).
¶37 We acknowledge that the provision "for ... the benefit of the prisoner" is broad. However, we need not define the full scope of what might be for the benefit of a prisoner. The topic here is unpaid restitution and we have explained how the case law well supports the view that it is in the rehabilitative interest of a defendant to compensate his or her victims. Markovic fails to persuade us otherwise.
¶38 We conclude that DOC may take money from Markovic's account that has been "delivered to an *596 employee of any state correctional institution for ... a prisoner" *212 to satisfy the restitution Markovic previously failed to pay, because it benefits him to pay unpaid restitution.[4]
II. Whether the Circuit Court Lacked Authority to Order DOC to Repay the Money it Improperly Took
¶39 Having concluded that DOC lacked statutory authority to take money from Markovic's earnings under WIS. STAT. § 303.01(8)(b) to satisfy unpaid restitution ordered in a judgment that imposed a sentence after he completed that sentence, we turn to DOC's argument that the circuit court lacked authority to order DOC to return any money it improperly took. This presents a question of law that we review de novo. State v. Minniecheske , 223 Wis. 2d 493, 496, 590 N.W.2d 17 (Ct. App. 1998). For reasons we now explain, we agree with DOC.
¶40 We first observe that in their briefing before us, neither DOC nor Markovic distinguish the *597 source of funds when discussing DOC's authority to take money from Markovic's prison account. Thus, the parties do not shed light on any practical problems that might arise in distinguishing what money remaining in a prison account, that Markovic continually draws from, is from earnings or from outside funding sources. For that matter, we are not told whether prisoners have a single account for money from both sources or multiple accounts. This topic may have implications for how much money DOC improperly took from Markovic. We need not address that topic, however, because we conclude here that the circuit court lacked the authority to order DOC to return any money.
¶41 It is well established that "the powers of a court sitting in certiorari are by definition limited" and that in certiorari actions a circuit court must apply the four-part inquiry set forth at the start of this discussion section. Greer , 353 Wis. 2d 307, ¶¶35, 77, 845 N.W.2d 373. We have held that in conducting this inquiry, the circuit court may "either affirm or reverse on review" or "remand for limited purposes." State ex rel. Lomax v. Leik , 154 Wis. 2d 735, 741, 454 N.W.2d 18 (Ct. App. 1990). Courts in certiorari actions have no authority to order agencies to perform specific acts, such as awarding damages or monetary relief. Coleman v. Percy , 86 Wis. 2d 336, 341, 272 N.W.2d 118 (Ct. App. 1978), aff'd , 96 Wis. 2d 578, 292 N.W.2d 615 (1980) ("Damages may not be awarded on certiorari."); Starkweather v. Sawyer , 63 Wis. 297, 300, 23 N.W. 566 (1885).
¶42 Markovic argues that the relief he seeks is different from money damages because he "is only requesting that he be reimbursed for the money that was illegally taken from his prison account by the *598 DOC, nothing more, nothing less." In essence, Markovic is arguing that the circuit court may order monetary relief based on its equitable authority. But, even where a court may use equitable authority to provide monetary relief, the court is still *213 awarding monetary relief. We appreciate that the circuit court believed that Markovic is fairly entitled to this form of relief under the circumstances, but our supreme court has concluded in Greer , 353 Wis. 2d 307, ¶89, 845 N.W.2d 373, that "a circuit court sitting in certiorari cannot properly entertain equitable arguments."
¶43 In sum, in his arguments presented to us, Markovic points to no authority for the proposition that the monetary relief he seeks is available in certiorari actions.[5]
CONCLUSION
¶44 We conclude that DOC lacked statutory authority under WIS. STAT. § 303.08(1)(b), and, therefore, did not act within its jurisdiction and according to law when it took money from Markovic's earnings beginning in 2016 to satisfy unpaid restitution that had been ordered in a 1995 judgment that imposed a sentence after Markovic completed that sentence in 2002. However, we conclude that DOC possessed statutory authority to take money delivered from outside *599 the prison to Markovic's prison account under WIS. STAT. § 301.32(1) because DOC's use of that money to satisfy unpaid restitution was "for the benefit" of Markovic. Finally, we conclude that the circuit court lacked authority in this certiorari action to order DOC to return any money it improperly took from Markovic's earnings. Accordingly, we affirm in part and reverse in part.
By the Court. -Order affirmed in part; reversed in part.

The parties refer to the appellant Jon Litscher, who was the DOC Secretary at the time relevant to this appeal, as DOC, and we will do the same.

Where the pertinent language of the 2015-16 version of the statutes is unchanged from the 1995-96 version in effect at the time of Markovic's conviction, the references to the Wisconsin Statutes are to the 2015-16 version. Otherwise, references to the 1995-96 or other versions of the statutes are noted as such in the text.

After Markovic filed his certiorari petition, DOC informed him that DOC would no longer take money out of inmates' prison accounts to satisfy restitution ordered in a case where the sentence in that case was completed and that his 1995 case was "closed," but that DOC would not return the money already taken out of Markovic's account relating to the "closed" 1995 case, amounting to about $600. The circuit court rejected DOC's argument that the issue had become moot, and DOC does not renew its mootness argument on appeal.

We do not address in this opinion recent legislative amendments addressing DOC's authority to take earnings and money from prison accounts pursuant to orders for restitution going forward. Specifically, 2015 Wis. Act 355 was enacted on April 11, 2016, and created Wis. Stat. § 973.20(11)(c), which provides:
If a defendant who is in a state prison or who is sentenced to a state prison is ordered to pay restitution, the court order shall require the defendant to authorize [DOC] to collect, from the defendant's wages and from other moneys held in the defendant's prisoner account, an amount or percentage [DOC] determines is reasonable for payment to victims.
Section 973.20(11)(c) was not in effect when Markovic was ordered to pay restitution in 1995, and therefore the circuit court was not then obligated to require Markovic to authorize DOC to take his earnings and other money for restitution.

DOC asserts that Markovic's remedy properly lies with the state claims board. See State v. Minniecheske , 223 Wis. 2d 493, 502, 590 N.W.2d 17 (Ct. App. 1998) (holding that the sentencing court did not have the power to refund to the defendant restitution improperly seized by the State, and stating that the defendant "could file a claim with the state claims board which is specifically authorized to remedy claims such as those [the defendant] asserts."). We take no position as to the availability of other remedies.